CLEVELAND METROPOLITAN HOUSING AUTH., APPELLEE, *v.*
LINCOLN PROPERTY MANAGEMENT CO., INC., ET AL.,
APPELLEES; ET AL., APPELLANT.

[Cite as Cleveland Housing Auth. v. Lincoln Property
(1970), 22 Ohio App. 2d 157.]

(No. 29619—Decided June 4, 1970.)

*Mr. Walter C. Kelly, Jr.,* and *Mr. C. Daniel Murray,*
for plaintiff-appellee.

*Mr. Joseph Feniger,* for defendant-appellee Harry
Rosansky.

*Mr. Clarence L. James, Jr.,* director of law, *Mr. John
H. Kless, Mr. Lloyd B. Silverman* and *Mr. James P. Man-
cino,* for appellant.

DAY, J. The Cleveland Metropolitan Housing Authority
filed a petition on January 20, 1967, for the appropriation
of certain real property located at 2548 East 61st Street,
Cleveland, Ohio. Among the parties defendant was Har-
ry Rosansky who held a first mortgage on the property
dating from October 4, 1955. Also a party defendant was
the city of Cleveland which claimed a lien for the cost of
demolishing a building on the premises—this under favor

of Section 715.261, Revised Code. That section provides in pertinent part:

"The total cost * * * [to a municipality] of removing insecure, unsafe, or structurally defective buildings or other structures, * * * shall be certified * * * to the county auditor and * * * placed upon the tax duplicate.[1] Such costs shall be[2] a lien upon such lands *from* and *after the date of entry* and *shall be collected as other taxes* and returned to the municipal corporation." (Bracketed material and emphasis supplied.)

The Auditor for Cuyahoga County accepted the lien on November 10, 1966, placing it on the 1967 tax duplicate.

The first mortgagee does not contest the validity of the city's lien and no controversy would arise between the first mortgagee and the city of Cleveland but for the inadequacy of the proceeds from the sale of the land. The money realized is not enough to pay both the mortgage lien and the demolition lien.

The sole issue before this court is whether the demolition lien, accruing after the first mortgage, is prior to the first mortgage lien.

To resolve the issue, the initial recourse is to Section 715.261, Revised Code. Had the statute simply provided that liens established by virtue of it were superior to first mortgage liens antecedent in time, a decision on priorities would be easy. Unfortunately, the statutory language is not that direct and clear and requires interpretation to define the legislative meaning.

The ambiguity arises from two phrases in the statute:

---

[1]This provision prevails "regardless whether such removal is authorized under Section 715.26 of the Revised Code or Section 3, Article XVIII, Ohio Constitution * * *." See Section 715.261, Revised Code, in 131 Ohio Laws 256. See, also, Section 715.261, Revised Code, as amended, effective February 21, 1967, 132 Ohio Laws 374-375. The only effect of the amendment on the quoted portion of the statute appearing in this footnote is to eliminate the comma after "3" and insert "of."

[2]The original version of Section 715.261, Revised Code, is quoted here from 131 Ohio Laws 256. The later amendment, effective February 21, 1967 (see 132 Ohio Laws 374-375), changed "shall be" to "are" before the word "lien." The change appears to make no difference to the substance of the statute.

(1) "Such costs are a lien upon such lands *from and after the date of entry*" and (2) "*shall be collected as other taxes * * * .*" (Emphasis and numerals supplied.)

If we are to assume that the words "from and after the date of entry" are crucial, then the Legislature could be understood as intending the demolition lien to be effective only *after* entry of the lien and, arguably, superior only to secured claims which follow it in time. One unfortunate consequence of this interpretation would be to encourage owners of land to keep their properties encumbered and impede the satisfaction of demolition liens. Another would be an understandable reluctance on the part of municipalities to raze nuisance structures because of the dubiety of reimbursement, thus inhibiting the abatement of nuisances and the improvement[3] of properties.

Either consequence seems an unlikely reflection of legislative intent, especially in the light of the admonition that the demolition lien "shall be collected as other taxes * * *." In this connection it is significant that in *Collister* v. *Kovanda* (Cuyahoga County, 1935), 51 Ohio App. 43, 48-49, 52-53, the court, interpreting Section 3897, General Code,[4] found that special assessments had the traditional priority accorded general tax liens despite the language in Section 3897 providing that special assessments "* * * shall be a lien *from* the date of assessment * * *" (emphasis added); cf. *Lima* v. *Cemetery Assn.* (1884), 42 Ohio St. 128, 130, 51 Am. Rep. 809. Moreover, the *Kovanda* case called general taxes and assessments "synonymous." *Collister* v. *Kovanda, supra,* 46:

"* * * It is * * * settled in this state that in a general sense general taxes and assessments are synonymous, for both are levied by virtue of the sovereign power of the state for the public good. * * *"

Demolition liens may be analogized to special assess-

---

[3]"Improvement" is used here in the same sense as "improvements" which assessments are imposed to effect. See *Norwood* v. *Baker* (1898), 172 U. S. 269 278-279, 43 L. Ed. 443, 447, 19 S. Ct. 187, and Section 727.01, Revised Code.

[4]Section 3897, General Code, later became Section 727.55, Revised Code, which was repealed effective January 1, 1962.

ment liens since both are created from "improvement" activity. And, if demolition liens are, for priority purposes, equivalent in objective and effect to assessments, and assessments have the same priority status as general taxes (*Collister* v. *Kovanda, id.*), then the familiar proposition —things equal to the same thing are equal to each other— applies to establish a probable legislative intention to give a priority to demolition liens similar to that provided for general taxes. This conclusion comports with the legislative admonition that demolition costs "shall be collected as other taxes." In the context of the facts of this case, the foregoing rationale means the demolition lien is superior to the prior first mortgage, and we so hold.

The appellee contends that to grant priority to a statutory demolition lien over a valid mortgage interest, which accrued before the statute was passed, is a constitutionally impermissible impairment of the obligation of contracts. The view we take of the lien (as tantamount to a tax lien) disposes of the appellee's constitutional contention. This is so because every owner takes his property subject to the taxing power. Moreover, it can be argued that a tax lien is "not upon any specific interests in the land [*e. g.,* a mortgage agreement], but upon the land itself, that is, upon the *res.*" *Collister* v. *Kovanda, supra,* 52 (Bracketed material supplied.)

The judgment is reversed, and the cause is remanded for further proceedings according to law in accordance with this opinion.

*Judgment reversed.*

WHITE, C. J., and WASSERMAN, J., concur.